693 So.2d 659 (1997)
George E. BOYHAN, Appellant,
v.
George J. MAGUIRE, Appellee.
No. 96-0439.
District Court of Appeal of Florida, Fourth District.
May 7, 1997.
Arthur J. England of Greenberg, Traurig, Hoffman, Lipoff, Rosen, Quentel, P.A., Fort *660 Lauderdale, and Geoffrey L. Jones of Jeck Harris Jones & Kaufman, L.L.P., Jupiter, for appellant.
John L. Avery, Jr., of the Law Office of John L. Avery, Jr., Jupiter, for appellee.
FARMER, Judge.
The losing party in an arbitration sought to have the arbitration decision vacated on the grounds of partiality by an arbitrator. The trial court found that appellant had failed to demonstrate "evident partiality" by the chairman of the arbitration panel. We affirm.
Boyhan, an engineer, signed a royalty agreement with his former employer providing that he would receive a percentage of income in exchange for his services in the construction of a paper mill in Alabama. Maguire was his accountant, who assisted Boyhan in obtaining the royalty agreement. Boyhan and Maguire entered into a separate agreement providing that Maguire would receive 15% of all royalties received as payment for his services in conjunction with the royalty agreement. The agreement between Boyhan and Maguire further spelled out Maguire's duties.
A disagreement arose between Boyhan and his former employer with respect to the royalties, resulting in arbitration of the dispute. The later arbitration between Boyhan and Maguire, which is the subject of this appeal, arose from Maguire's alleged unwillingness to aid Boyhan in the previous royalty arbitration. This, Boyhan claimed, was a breach of their agreement and resulted in a less advantageous settlement with his former employer.
The Boyhan-Maguire arbitration hearing was held in accordance with the rules of the American Arbitration Association (AAA) as provided by their agreement. During the hearing, a part of the transcript from the prior arbitration between Boyhan and his employer was offered into the record, consisting of the earlier panel's examination of Maguire. The chairman of the current arbitration panel commented on this evidence and a colloquy took place as follows:
"CHAIRMAN: Let me make an observation at this point. If at this juncture Mr. Maguire were to have said, `I confess all. I've come to make a deal wherein I'm going to get some money outside of the royalty agreement and I'm going to testify against Boyhan,' I would have assumed and it would be my opinion at this juncture that his having said that would have been predicated upon the fact that he'd been badgered, he'd been knocked about in a manner that nobody's been knocked around in this room today or this chamber on any of the days. This thing has gone beyond ridiculous, in my estimation, at this juncture. I don't knowI don't understand how that panel could have allowed this man to have been abused in the manner that he was.
"[Arbitrator] POPPLETON: These are the panel members asking the questions.
"CHAIRMAN: Just so you get some of the flavor of how I feel about this. This is one panelist talking. You talk about repetitiveness and redundancy, they've tried to elicit something from this gentleman over a period of now, what is it, 15 or 20 minutes, they've gone about it in 15 different ways and three people joining in this effort to inveigle something from him, and he's holding up not only admirably but unbelievably. Now you may proceed.
"[Arbitrator] CANTY: Also, you know, here you have a lawyer who has offered a deal, criticizing a person for not having accepted it.
"CHAIRMAN: Now, you got that. And not only that, there's some chicanery here in terms of some difficulties that I have with the ethics of the people involved.
"[Arbitrator] CANTY: Um-hum.
"CHAIRMAN: As an attorney, and I'll put it to you two gentleman, you have somebody come to you, you know what the deal is between him and another entity, your client, and that individual is trying to perhaps, as you might put it, sell his testimony, what do you do with that guy? And I'm using a word or a reference from habit that I've learned from Mr.
"MR. AVERY [counsel for Maguire]: My bad manners.

*661 "CHAIRMAN:Mr. Avery. What do you do with that gentleman, that chap? You kick him the hell out of your office, don't you?
"[Arbitrator] POPPLETON: Of course.
"CHAIRMAN: You distance yourself from that gentleman, don't you? Just so you have the flavor of my thinking, and I assume that my panelists concur with me.
"POPPLETON: I would have certainly kicked him out of my office.
"CHAIRMAN: You would have distanced yourself from him. Let me tell you, you would have, Mr. Jones, Mr. Jeck [co-counsel for Boyhan], as I understand you two gentlemen and your professionalism.
"MR. JONES: Absolutely. I would state that unequivocally. I'm only dealing with the record.".[1]
The attorneys then finished reading the transcript into the record, at which time another exchange transpired regarding Boyhan's attorney in the prior arbitration, Mr. Cooper:
"MR. AVERY: Okay. I would offer also at the panel's leisure for them to read the examination by Mr. Cooper to point out that there was no help coming from that juncture at that time; that clearly as Mr. Cooper admitted, he took this as an opportunity to use Mr. Maguire to further his case.
"CHAIRMAN: Well, let me make my position clear with Mr. Cooper in this matter at this juncture and even before when he was here. Mr. Cooper who is apparently perhaps going to be the successor to the president to the American Bar Association is somebody who haswho I have certain suspicions about in terms of his capabilities as a result of what I know about his involvement in this procedure, and I'm on record in this matter. All right, sir?
"MR. JONES: Very well. I'd just like to
"[Arbitrator] CANTY: I want to expound a little bit. Now, there's a method that the law has that's available to people in arbitration to develop facts, and that is deposition. And you can order a person to be deposed, and at that point he is required to testify. But both sides have a shot at him. Nothing's hidden, no side deals, all that kind of thing. I mean, there's an apparent way that Mr. Greenwald should have known about but did not avail himself of."
After a brief discussion of unrelated matters, a lunch break ensued.
Upon resuming the hearing that afternoon, Boyhan's counsel immediately moved for the disqualification of the chairman, pursuant to Rule 19 of the AAA commercial arbitration rules. According to Boyhan's counsel, who read the rule into the record, Rule 19 provides as follows:
"Upon objection of a party to the continued service of a neutral arbitrator, the AAA shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision which shall be conclusive."
After holding a separate hearing on the matter, the AAA denied the request to disqualify the Chairman.
On appeal, Boyhan seeks to invoke the language of section 682.13(b),[2] which requires the court to vacate an arbitration award when:
"there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or umpire or misconduct prejudicing the rights of any party." [e.s.]
Specifically, he argues that the comments of the chairman of the panel demonstrate evident and undeniable partiality.[3] In response to this claim, Maguire initially argues that the parties gave the AAA exclusive jurisdiction over this issue by virtue of their stipulation *662 to abide by the AAA's rulesreferring, of course, to Rule 19's provision on the conclusiveness of the AAA determination on disqualification.
When faced with similar stipulations, federal courts have required compliance with Rule 19 but only to preserve the evident partiality issue for judicial review; they do not hold that the AAA's determination of the issue is then binding on the court in a proceeding to vacate the award. See, e.g., San Carlo Opera Co. v. Conley, 72 F.Supp. 825 (S.D.N.Y.1946) (compliance with rules of AAA constitutes exhaustion of remedies within those rules, thereby preserving issue of partiality for judicial review; parties' arbitration agreement provided for compliance with AAA rules). As the Florida Arbitration Code specifically articulates evident partiality as a basis to vacate an award, thus within the jurisdiction of the courts, we agree with the federal approach.
Moreover, Rule 19 provides that the AAA's determination with respect to the continued service of an arbitrator is conclusive, in what we construe as an interlocutory determination, but does not address the vacation of an award after an arbitrator has been challenged but continues to serve. Thus, we do not believe that submission of this issue to the AAA in accordance with Rule 19 in any way limits or bars a court from considering the issue when properly raised in a proceeding to vacate an award. Because Boyhan challenged only the specific portions of transcript indicated in the opinion, however, we limit his challenge to only those cited comments as being preserved.[4]
Review of arbitration proceedings is extremely limited. An award may not be set aside by the court except upon the grounds set forth in section 682.13, namely specified, extrinsic acts of misconduct or procedural errors. Schnurmacher Holding, Inc. v. Noriega, 542 So.2d 1327 (Fla.1989). A reviewing court may not comb the record of the arbitration hearing for errors of fact or law inherent in the decision-making process. Id.; Dairyland Ins. Co. v. Hudnall, 279 So.2d 905 (Fla. 3d DCA 1973). In reviewing an order confirming or vacating an arbitration award, appellate courts are to apply the same standards as in any ordinary case, whereby findings of fact are reviewed under a competent and substantial evidence standard and legal questions are reviewed de novo. See § 682.20, Fla.Stat. (1995).
The courts addressing evident partiality claims have unequivocally denounced the appearance of partiality in arbitration proceedings; thus, a showing of circumstances which would reasonably tend to bias the judgment of an impartial arbitrator will suffice for vacation of an award. See, e.g., Gaines Construction Co. v. Carol City Utilities Inc., 164 So.2d 270 (Fla. 3d DCA 1964) (arbitration award vacated based on combination of prior relationship between arbitrator and parties as well as arbitrator's actions during arbitration proceedings). In International Ins. Co. v. Schrager, 593 So.2d 1196 (Fla. 4th DCA 1992), we stated as follows:
"Any tribunal permitted by law to try cases and controversies must avoid even the appearance of partiality. Each case must be reviewed on its own facts and an arbitration award should be set aside where the panel `might reasonably be thought biased.' Commonwealth Coatings Corp. v. Continental Casualty, 393 U.S. 145, 150, 89 S.Ct. 337, 340, 21 L.Ed.2d 301, 305 (1968)." [e.s.]
593 So.2d at 1197.
In this case, however, the "evident partiality" of which appellant complains is nothing more than the reaction of the arbitrator to one party's evidence. We do not believe that this kind of reaction to evidence can lawfully be equated with the kind of extrinsic, or improper, bias required by the statute for the vacation of an award. Indeed, it would be surprising if arbitrators were not moved by the evidence presented; that is in fact the very purpose of adducing evidence. An award would be impossible without the arbitrator *663 drawing some conclusions from the evidence presented.
We draw some guidance from the cases on judicial disqualification. Thus, a determination, whether spoken or not, by a trial judge that one party's position makes more sense than another is not improper. See, e.g., Dragovich v. State, 492 So.2d 350 (Fla.1986) (claim that judge had fixed opinion of defendant's guilt prior to trial, even when he discussed that opinion with others, insufficient to mandate disqualification of judge).
In this instance, appellant presented no evidence reasonably suggesting any predisposition on the part of the chairman to find for one party or the other. Accordingly, reversal upon the facts of this record would come dangerously close to intruding upon factors inherent in the arbitration decision-making process.
AFFIRMED.
GUNTHER, C.J., and POLEN, J., concur.
NOTES
[1] We have set forth the entire colloquy in which the alleged evident partiality occurred.
[2] See § 682.13, Fla.Stat. (1995).
[3] We note that the underscored part of this provision applies only to neutral arbitrators. The parties apparently do not dispute that the chairman of the panel was appointed as neutral; it also appears that, under AAA commercial rules, the parties each choose one of the arbitrators, and then those arbitrators or the AAA chooses a neutral third arbitrator' to act as chairman.
[4] We reject Maguire's contention that the failure to provide a transcript of the disqualification hearing before the AAA bars the court from vacating the award for partiality. We do have a transcript of the actual arbitration hearing, which we deem sufficient to review the trial judge's determination of the partiality issue.