857 So.2d 957 (2003)
Lanier DAVENPORT, Jerry Giles, Gary Giles and Terry Giles, Appellants,
v.
Peter DIMITRIJEVIC and Reels & Deals Games, Inc., Appellees.
No. 4D02-4953.
District Court of Appeal of Florida, Fourth District.
October 22, 2003.
*959 Jennifer G. Altman of Boies, Schiller & Flexner LLP, Miami, for appellants.
Jesse C. Jones of Jesse C. Jones, P.A., Miami, for appellee Peter Dimitrijevic.
GROSS, J.
This is an appeal of an order denying a motion brought under Florida Rule of Civil Procedure 1.540(b)(3) to set aside a final judgment confirming an arbitration award. We affirm, because we hold that the affidavit filed in support of the motion failed to justify the vacation of the arbitration award.
Appellee, Peter Dimitrijevic, was married to Emma Jane Giles. Emma Jane is the sister of appellants Jerry, Gary, and Terry Giles. Dimitrijevic, the Giles brothers, and appellant Lanier Davenport, were all shareholders of Reels & Deals Games, Inc., a company that developed games for placement in stores, bars, and casino rooms in Texas.
During her marriage, Emma Jane told her brothers that Dimitrijevic had a drinking problem and had hit her on more than one occasion. As a result of these claims, the appellants noticed a meeting at which they planned to relieve Dimitrijevic of his corporate responsibilities and, ultimately, to remove him as a shareholder.
Dimitrijevic responded with a lawsuit. The trial court ordered all claims to be arbitrated.
In arbitration, Dimitrijevic filed a three-count statement of claim. One of the counts against Emma Jane and the Giles brothers was for defamation. The basis of the defamation claim was statements the Giles brothers made to customers and potential customers of Reels & Deals accusing Dimitrijevic of substance abuse and domestic violence on Emma Jane. The other counts alleged breaches of contract and fiduciary duties.
Dimitrijevic contended that the Giles brothers had a "disproportionate and furied response to a minor altercation" between him and his wife. In June 2000, Emma Jane and Dimitrijevic were divorced. In the final decree, Emma Jane received one-half of her husband's stock in the corporation.
At the arbitration hearing, Dimitrijevic testified that he had never had a drinking or substance abuse problem, and that he had never been treated for alcoholism. He denied ever beating his wife, admitting only that he had slapped her, after she slapped him first, in 1999.
After the hearing, the arbitration panel found that the Giles brothers had breached their fiduciary duty to Dimitrijevic by, inter *960 alia, defaming him. Rejecting Emma Jane's testimony to the contrary, the panel found that there was "no competent evidence" to support the claim that Dimitrijevic had a drinking problem and that "none of the other Directors of Reels & Deals conducted any type of due diligence investigation to determine the sufficiency of such `excessive drinking' charges made by one person only, Emma Jane" Giles. The panel determined
that the clear and convincing evidence establishes that Emma Jane [Giles], Jerry Giles, Terry Giles and Gary Giles defamed Peter Dimitrijevic by stating that he had a serious drinking problem and had violent tendencies, and by implying that he was therefore dangerous and unreliable in the performance of his job duties.
The panel concluded that the corporation "never received any complaints that Peter Dimitrijevic was drinking on his job" and that "[h]e always fulfilled all of his duties and functions competently." The panel awarded a total of approximately $995,000.00 on Dimitrijevic's three claims.
The circuit court confirmed the arbitration award in a final judgment entered on May 1, 2002.
On October 21, 2002, the Giles brothers and other defendants moved to set aside the judgment and vacate the arbitrator's award on the ground of fraud. They alleged that Dimitrijevic had committed perjury when he testified before the arbitration board that he was not violent and did not have a drinking problem.
In support of their motion, they offered an affidavit of Misty Thompson, who had been Dimitrijevic's girlfriend. The girlfriend contacted Jerry Giles on September 23, 2002, shortly after her relationship with Dimitrijevic had ended.
Thompson's affidavit indicated that she had been in a three-year relationship with Dimitrijevic. The affidavit stated in pertinent part:
3. During the course of my relationship with Pete Dimitrijevic, I was subject, on multiple occasions, to physical violence at the hands of Pete Dimitrijevic. Pete Dimitrijevic, on a regular basis, abused alcohol and illegal substances including cocaine and marijuana. Often times Pete Dimitrijevic drinks a 12 pack or two of Corona on a daily basis along with Courvoisier, cocaine and marijuana.
4. [Approximately eight months after the panel rendered its arbitration award], Pete Dimitrijevic was arrested for domestic violence while we were in New Orleans, staying at the Astoria Crown Plaza Hotel. Pete Dimitrijevic had been drinking heavily and approached me later while laying in bed. He grabbed me with both hands and began choking me, forcing me to defend myself against him. The police were called and [a] report was filled out.
5. [Approximately nine months after the panel rendered its arbitration award], I was driving in my car with Pete Dimitrijevic in Pasadena, Texas, when he reached over and grabbed me by the hair with both hands. I was forced to defend myself. The police were called and a report was filled out (# XXXX-XXXXX).
6. Only months earlier, in June of 2001,[1] the Clear Lakes Forest Clinic in Taylor Lake, Texas, was forced to call the police because of Pete Dimitrijevic's [sic] violent and erratic behavior. The incident resulted from certain medical *961 treatment received by Pete Dimitrijevic's cat, which caused him to threaten verbally and physically the employees of the clinic. The police were call[ed].
The Giles brothers argued that the affidavit established that Dimitrijevic had perpetrated a fraud on the arbitration panel when he testified that he did not have an alcohol problem and that he was not a violent person. The trial court denied the motion without an evidentiary hearing.
We affirm, because the affidavit was insufficient to trigger an evidentiary hearing on whether Dimitrijevic perjured himself during his September and October 2001 testimony before the arbitration panel.
Florida Rule of Civil Procedure 1.540(b)(3) provides that a court may relieve a party from a final judgment for the reason of "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Here, the Giles brothers' rule 1.540(b)(3) motion sought to set aside a judgment confirming an arbitration award; the motion is therefore confined by the rules governing arbitrations.
"Review of arbitration proceedings is extremely limited." Boyhan v. Maguire, 693 So.2d 659, 662 (Fla. 4th DCA 1997). "A high degree of conclusiveness attaches to an arbitration award because the parties themselves have chosen to go this route in order to avoid the expense and delay of litigation." Affiliated Mktg., Inc. v. Dyco Chems. & Coatings, Inc., 340 So.2d 1240, 1242 (Fla. 2d DCA 1976).
A court may not set aside an arbitration award except upon those grounds set forth in section 682.13(1), Florida Statutes (2002). See Schnurmacher Holding, Inc. v. Noriega, 542 So.2d 1327, 1328 (Fla. 1989); Boyhan, 693 So.2d at 662. Section 682.13(1)(a) provides that a court "shall vacate" an arbitration award if "[t]he award was procured by corruption, fraud[,] or other undue means."
In this case, the Giles brothers were entitled to relief only if the fraud they alleged was sufficient to set aside the arbitration award under section 682.13(1)(a). If Misty Thompson's supporting affidavit set forth "facially sufficient grounds" for such relief, only then were the Giles brothers entitled to a hearing on their rule 1.540(b)(3) motion. See World Inv. Corp. v. Breen, 684 So.2d 221, 222 (Fla. 4th DCA 1996); see also Seal v. Brown, 801 So.2d 993, 994-95 (Fla. 1st DCA 2001); Estate of Willis v. Gaffney, 677 So.2d 949, 951 (Fla. 2d DCA 1996).
Section 682.13(1)(a) contains language almost identical to 9 U.S.C. § 10(a)(1) (2002).[2] This court may therefore look to federal law to interpret section 682.13(1)(a). A party who alleges that an arbitration award was procured "by corruption, fraud[,] or other undue means" must (1) establish the fraud by clear and convincing evidence and demonstrate that the fraud (2) was not discoverable by the exercise of due diligence before or during the arbitration hearing and (3) was materially related to an issue in the arbitration. See, e.g., Int'l Bhd. of Teamsters, Local 519 v. United Parcel Serv., Inc., 335 F.3d 497, 503 (6th Cir.2003); Gingiss Int'l, Inc. v. Bormet, 58 F.3d 328, 333 (7th Cir. 1995); Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378, 1383 (11th Cir.1988).
The Giles brothers' attack on the arbitration award failed on two of these grounds.
*962 First, whether Dimitrijevic was a spouse abuser with an alcohol problem was central to the defamation claim. All parties were aware of Dimitrijevic's denials. At the arbitration, the Giles brothers offered only one witness, Emma Jane, to counter Dimitrijevic's testimony. The arbitrators rejected her version of the facts.
Testimony about these issues was available from anyone who knew Dimitrijevic at the time of the arbitration. Thompson was his girlfriend of three years. Neither in their motion nor in the supporting affidavit did appellants demonstrate that Thompson or other witnesses with similar knowledge were not "discoverable by due diligence" before the arbitration hearing.
As the second circuit has written, since a claim of fraud through perjury "necessarily raises issues of credibility which have already been before the arbitrators once, the party relying on it must first show that he could not have discovered it during the arbitration, else he should have invoked it as a defense at that time." Karppinen v. Karl Kiefer Mack Co., 187 F.2d 32, 35 (2d Cir.1951).
A claim of fraud under section 682.13(1)(a) is not an opportunity to obtain a second bite of the apple to correct a party's deficiencies of proof at an arbitration. See Shearson Hayden Stone, Inc. v. Liang, 653 F.2d 310, 313 (7th Cir.1981) (stating that "[9 U.S.C. § 10(a)(1)] does not allow vacation of an award for new evidence.").
A litigant's failure to prove a case in arbitration cannot be absolved by the discovery of evidence that could have been uncovered in time for the original hearing. This is the point of Bridgeport Rolling Mills Co. v. Brown, 314 F.2d 885 (2d Cir. 1963), which involved an arbitrator's award to reinstate an employee with back pay. The employee had been "discharged under suspicion of complicity in the theft of materials" from his employer's plant. Id. The arbitrator found that the employer's evidence offered against the employee "in the arbitration proceeding consisted of `mere rumor and gossip.'" Id. Alleging that the employee's testimony at the arbitration hearing had been perjurious, the employer moved to vacate the award claiming that evidence uncovered after the arbitration conclusively established the employee's complicity in the thefts.
The second circuit affirmed the district court's denial of the employer's motion to vacate; it wrote that the employee's guilt, if proved after the arbitration, "does not require the conclusion that the arbitrator's award, when made, was procured by fraud, for the decision of the arbitrator was based upon the failure of the employer's proof to convince rather than on the strength of [the employee's] alleged perjurious testimony." Id. at 886.
The second failure of the Giles brothers' motion involves the nature of the proof offered to demonstrate fraud.
Perjury constitutes fraud within the meaning of section 682.13(1)(a) and 9 U.S.C. § 10(a)(1). See Bonar, 835 F.2d at 1383 n. 7; Dogherra v. Safeway Stores, Inc., 679 F.2d 1293, 1297 (9th Cir.1982). In cases finding a sufficient claim of such fraud, the "clear and convincing" evidence offered by the party attacking the arbitration award either involved directly contrary statements by the purported perjurer or reliable evidence of perjury from an unbiased source.
Thus, in Bonar, an expert witness testified to having certain degrees and credentials; the contrary evidence supporting a section 10(a)(1) motion were letters from "relevant university officials" and an insurance company that stated that the expert did not have the degrees or credentials he *963 claimed. 835 F.2d at 1384. In Dogherra, a witness admitted that his statement to union investigators was a lie. 679 F.2d at 1295. In International Brotherhood of Teamsters, a key witness recanted his testimony to the arbitrator that a fellow employee had physically assaulted him. 335 F.3d at 502.
Thompson's affidavit did not provide this quality of evidence of Dimitrijevic's perjury. Thompson was simply another witness who disagreed with Dimitrijevic's opinion about his use of alcohol and propensity for spouse abuse. Her affidavit did not directly undermine Dimitrijevic's testimony.
The three incidents specifically described in the affidavit occurred months after the arbitration hearing. The Giles brothers did not offer Dimitrijevic's prior inconsistent statements about a material matter in the arbitration. Cf. Dynasty Express Corp. v. Weiss, 675 So.2d 235, 239-40 (Fla. 4th DCA 1996) (rule 1.540(b)(3) case where witness gave testimony in federal court that was directly contrary to his testimony in state lawsuit). As a very recent ex-girlfriend, Thompson was hardly an unbiased source. Thompson's new evidence did not conclusively disprove Dimitrijevic's testimony. Rather, the "new" evidence was the type that the arbitrators would have weighed in determining credibility. Failure to consider credibility evidence is not a ground for vacation of an arbitration award. See Liang, 653 F.2d at 313.
Because Thompson's affidavit did not clearly and concisely set out a case for fraud under section 682.13(1)(a), an evidentiary hearing was not required on the rule 1.540(b)(3) motion. Discussing a rule 1.540(b)(3) motion not involving a judgment confirming an arbitration award, we explained in Flemenbaum v. Flemenbaum, 636 So.2d 579, 580 (Fla. 4th DCA 1994) that
[u]nder Florida Rule of Civil Procedure 1.540(b)(3), a court may relieve a party from a final judgment for fraud. Florida Rule of Civil Procedure 1.120(b) requires that the circumstances constituting fraud "be stated with such particularity as the circumstances may permit." This means that a rule 1.540(b)(3) motion must clearly and concisely set out the essential facts of the fraud, and not just legal conclusions. To entitle a movant to an evidentiary hearing, a rule 1.540(b)(3) motion must specify the fraud. In addition to specifying the fraud, the motion should explain why the fraud, if it exists, would entitle the movant to have the judgment set aside.
... If a motion on its face does not set forth a basis for relief, then an evidentiary hearing is unnecessary. The time and expense of needless litigation are avoided and the policy of preserving the finality of judgments is enhanced.
(Citations omitted).
To set aside an arbitration award, section 682.13(1)(a) requires an even stronger showing of fraud than rule 1.540(b)(3). Because appellants failed to make such a showing, we affirm the trial court's denial of relief.
AFFIRMED.
GUNTHER and KLEIN, JJ., concur.
NOTES
[1] This paragraph is ambiguous. The reference to "months earlier," when read after paragraph 5 of the affidavit, leads to the conclusion that the incident described occurred in June 2002, and that "2001" is a typographical error.
[2] 9 U.S.C. § 10(a)(1) provides that a United States district court "may make an order" vacating an arbitration award "where the award was procured by corruption, fraud, or undue means."