925 So.2d 1142 (2006)
BRANDON JONES SANDALL ZEIDE KOHN CHALAL & MUSSO, P.A.; Michael S. Zeide, M.D.; Edward W. Sandall, M.D.; Marvin A. Kohn, M.D.; Joseph B. Chalal, M.D.; and Emilio S. Musso, M.D., Appellants,
v.
BEASLEY & HAUSER, P.A.; and Montgomery & Larson, LLP, Appellees.
No. 4D05-2820.
District Court of Appeal of Florida, Fourth District.
April 26, 2006.
*1143 Nancy W. Gregoire of Bunnell Woulfe Kirschbaum Keller McIntyre & Gregoire, P.A., Fort Lauderdale, and Ronna Friedman Young, of Sachs Sax & Klein, Boca Raton, for appellants.
James W. Beasley, Jr., and Robert J. Hauser of Beasley Hauser Kramer & Leonard, P.A., West Palm Beach, for appellees.
FARMER, J.
Here we review an order refusing to vacate an arbitration award. The trial court found that the party seeking such relief failed to prove "evident partiality" on the part of the neutral arbitrator. We affirm.
The subject of the arbitration was attorneys' fees. The client doctors and their attorneys could not agree on the amount, if any, of additional fees due for representation at the end of an appellate matter. To settle their differences, they entered into an after-the-fact agreement to arbitrate. They agreed to a panel of three arbitrators, all of whom would be members of the Florida Bar. They also apparently construed their agreement to mean that the arbitrators would be from Palm Beach County. The client doctors proceeded to designate their arbitrator, and the attorneys designated theirs. The two designated arbitrators of the parties then had to settle on a neutral arbitrator.
The several lawyers involved as parties and arbitrators in this case were spread among prominent local law firms. The client doctors had professional and social relationships with some of the members of these firms. Some attorneys considered for neutral arbitratoras well as partners in a chosen neutral's firmwere very likely to have prior relationships and continuing future contacts with individual parties to this dispute and their professional associates. From the beginning, it would have seemed unlikely, given their interrelated social and professional relationships in Palm Beach County, that the neutral arbitrator would be untouched by past or future contacts of both doctors and lawyers *1144 unrelated to the substance of this attorney fee dispute.
And so their agreement gave both sides several days to decide on the neutral. There can be no doubt that the parties consulted their designated arbitrators on whom to appoint. Indeed there was testimony that the client doctors even consulted additional outside counsel regarding the arbitration. From a list of proposed neutral arbitrators, ultimately both of the arbitrators designated by the parties agreed to appoint a former trial court judge (whom the parties honorifically refer to as Judge Rutter), now a partner in a local law firm. Both sides approved the appointment.
During the course of the ensuing arbitration, Rutter and his law firm were contacted by a Doctor Lesterwho is not a party and is not involved in any way with the claim being arbitratedfor legal advice or possible representation in regard to a peer review proceeding. Doctor Lester then had contacts with three of the claimant attorneys or their firms about potential future litigation on the unrelated matter. There were several contacts between Rutter (on the one hand) and members of his law firm and three of the claimant attorneys (on the other hand) in regard to providing documents and information connected to the subject matter of Doctor Lester's inquiries. Rutter did not disclose any of these contacts.
The arbitration proceeded to a conclusion. The arbitration decision found in favor of the attorneys in part and in favor of the client doctors in part. Indeed the final decision could plausibly be seen as a division of the baby into equal parts.
The trial judge held an evidentiary hearing lasting for two days on the client doctors' petition seeking to vacate the award for evident partiality of a neutral arbitrator. Among other things, the trial judge made the following findings of fact with regard to the above contacts:
a. the Law Firms and Rutter did not act as co-counsel with respect to issues relating to Dr. Lester or with respect to any other matter;
b. Dr. Lester sought legal advice from Rutter and the Law Firms for two different purposes and on two different matters;
c. there is no evidence that Rutter and the Law Firms were consultants for one another with respect to issues relating to Dr. Lester; Rutter was merely a transmitter of factual information relevant to proceedings relating to Dr. Lester;
d. there are no continuing or prior business dealings, and no business relationship, between the Law Firms and Rutter;
e. there is no financial relationship between the Law Firms and Rutter;
f. there is no social relationship between the Law Firms and Rutter;
g. [the client Doctors] have not shown there was bias or prejudice in the arbitration decision or by Rutter;
h. there is no evidence of any predisposition on the part of Rutter to rule in favor of one party or the other; and
i. but for Rutter's law partner's vacation, Rutter probably would not have had any contact with the Law Firms.
In making her decision, the trial judge expressed several conclusions of law from the evidence. She said that the client doctors were required to show that Rutter "`might reasonably be thought biased' under the circumstances."[1] "Mere speculation is not enough to establish evident partiality; [the client doctors] must establish `specific facts' that indicate improper motives of Judge Rutter." She *1145 further thought that "the evidence of bias must be `direct, definite and capable of demonstration.'" She concluded that the facts shown at the evidentiary hearing did not "demonstrate evidence of bias," saying: "The evidence in this case does not establish facts and circumstances that prove evident partiality." In doing so, she rejected the client doctors' principal argument that they were entitled to vacatur as a matter of law upon a showing of a mere appearance of partiality.
The Florida Arbitration Code provides that:
"Upon application of a party, the court shall vacate an award when: (a) The award was procured by corruption, fraud or other undue means; (b) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or umpire or misconduct prejudicing the rights of any party ...." [e.s.]
§ 682.13(1), Fla. Stat. (2005). The client doctors based their attack on subsection (1)(b) above, alleging "evident partiality" on the part of a neutral arbitrator. Focusing on the text of this statute, we read its plain meaning to require the complaining party to prove evident partiality prejudicing the rights of the party.[2] In other words, the partiality of the neutral must be obvious and plain and must be shown to have unfairly affected the rights of the complaining party.
The Fifth District recently construed section 682.13(1)(b) in RDC Golf of Florida I, Inc. v. Apostolicas, 925 So.2d 1082, 2006 WL 664207 (Fla. 5th DCA Mar. 17, 2006). Addressing an identical contention by a party seeking to set aside an arbitration award on the grounds of evident partiality, the court held that this provision requires "a showing through credible evidence, giving rise to a `reasonable impression of partiality' that was `direct, definite, and capable of demonstration,' as distinct from a `mere appearance' of bias that was remote, uncertain, and speculative." 925 So.2d at 1094. In RDC it turned out that the neutral arbitrator and the attorney for one of the parties to the dispute being arbitrated were jointly representing a synagogue in a matter involving a Rabbi, a fact that was not disclosed until the arbitration hearing had finished. The Fifth District concluded that the non-disclosure in that case did not create a "reasonable impression of partiality." [e.s.] Id. It strikes us that the contacts in the present case are even more harmless than those in RDC.
The client doctors argue that the Florida Arbitration Code provision quoted above should be interpreted in the same way several federal courts have construed the federal arbitration statute. They refer to selective parts of the principal dispositional opinion in Commonwealth Coatings Corporation v. Continental Casualty Corporation, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), to argue that a mere appearance of possible bias is sufficient. We note that the partiality shown in that case involved a close business relationship between the arbitrator and the defendant in arbitration, one that even involved the matter in arbitration. The federal statute construed in Commonwealth allowed the court to vacate an award "where there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2) (1968).
But it is at once apparent that the text of the federal statute differs in a significant aspect from the Florida statute. The Florida statute adds the qualifying provision prejudicing the rights of any party *1146 not found in the federal statute. We therefore doubt that the decisions construing the text of the broader federal statute offer much guidance as to the meaning of the narrower Florida provision.
The doctors also argue that our own decision in Boyhan v. Maguire, 693 So.2d 659, 662 (Fla. 4th DCA 1997), construes the Florida statute to allow a judge to set aside an arbitration award on the basis of a mere appearance of possible bias. We think they have read something unstated into Boyhan. The part of the opinion relied upon by the doctors is:
"The courts addressing evident partiality claims have unequivocally denounced the appearance of partiality in arbitration proceedings; thus, a showing of circumstances which would reasonably tend to bias the judgment of an impartial arbitrator will suffice for vacation of an award."
693 So.2d at 662. We should point out, however, that "a showing of circumstances which would reasonably tend to bias the judgment of an impartial arbitrator" is hardly the same thing as an appearance of possible bias. What Boyhan really seeks to make clear is that the particular circumstance that a party relies on to show evident partiality must be something that logically would reasonably tend to tilt the decision of the arbitrator. Only with such a circumstance could "evident partiality" possibly be shown.
In construing the Florida statute, we have held that "[a] very high degree of conclusiveness attaches to an arbitration award." Deen v. Oster, 814 So.2d 1065, 1068 (Fla. 4th DCA 2001). That means that the role of the judiciary in Florida arbitration decisions was meant to be quite limited and rare. If the parties intended for arbitration decisions to be broadly under the control of the judiciary, their agreement would hardly have the effect of substituting arbitration for litigation in a court. We think the sentiments expressed by Justice White in his concurring opinion in Commonwealth accurately portray the policies embodied in the Florida provision:
"The judiciary should minimize its role in arbitration as judge of the arbitrator's impartiality. That role is best consigned to the parties, who are the architects of their own arbitration process, and are far better informed of the prevailing ethical standards and reputations within their business."
393 U.S. at 151, 89 S.Ct. 337.
Rutter's undisclosed contacts do not demonstrate an obvious case of bias, and there is nothing showing that the contacts prejudiced the outcome in any way. The evidence of the client doctors at best shows that any tendency of the contacts to bias was insignificant and was outweighed by a neutrality that was far more real. Both sides were fully aware of close, interconnected workings among these professional groups in Palm Beach County when they agreed to appoint Rutter as the neutral arbitrator. Both sides foresaw that during the progress of the arbitration past and continuing professional relationships might well result in legal and medical contacts and referrals to lawyers or doctors on unrelated matters. Indeed their premeditated mutual appointment of this particular neutral arbitratorwith his past record of judicial servicesuggests a belief that if unrelated contacts did occur they could rely on habits, customs and attitudes of detachment and impartiality formed during previous judicial service as a safeguard against any possible prejudice.
Affirmed.
STONE and MAY, JJ., concur.
NOTES
[1] Citing Int'l Ins. Co. v. Schrager, 593 So.2d 1196, 1197 (Fla. 4th DCA 1992).
[2] One dictionary lists the following adjectives as sharing a "central meaning": apparent, clear, clear-cut, distinct, evident, manifest, obvious, patent, plain. AMERICAN HERITAGE DICTIONARY 88 (3rd ed.).