2007 UT App 102

**Kathleen FLEMING and Paul Fleming, Plaintiffs and Appellants,**

v.

**Charles SIMPER, M.D.; and Northern Utah Healthcare Corporation dba St. Mark's Hospital, Defendants and Appellee.**

No. 20051174–CA.

Court of Appeals of Utah.

March 22, 2007.

Michelle Diamond–Miller and Clark Newhall, Law Offices of Clark Newhall, Salt Lake City, for Appellants.

Shawn McGarry, Nan T. Bassett, Kipp & Christian PC, and Edward W. McBride Jr., Bennett & McBride PLLC, Salt Lake City, for Appellee.

Before GREENWOOD, Associate P.J., McHUGH, and THORNE, JJ.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶ 1 Plaintiffs Kathleen and Paul Fleming (the Flemings) appeal the trial court's order affirming an arbitration award in favor of Defendant Charles Simper, M.D., and dismissing the Flemings' case against Dr. Simper with prejudice. The Flemings argue that the order should be reversed because the arbitration award was procured through fraud.[1] We affirm.

## BACKGROUND

¶ 2 The Flemings filed suit against Northern Utah Healthcare Corporation dba St. Mark's Hospital (the Hospital) and Dr. Simper, alleging medical malpractice. They asserted that Dr. Simper negligently discharged Ms. Fleming from the hospital after a gastric bypass surgery and that the negligent discharge was the cause of Ms. Fleming's subsequent illnesses.

¶ 3 At a deposition on February 11, 2004, Dr. Simper stated that he "probably" discharges "a third" of his post-gastric bypass patients with supplemental oxygen. Approximately two months prior to arbitration, the Flemings requested written discovery from the Hospital regarding the frequency with which Dr. Simper and his partner, Dr. Halversen, discharge post-gastric bypass patients with home oxygen. The Hospital responded to the Flemings' request, but objected to providing the statistics. The Flemings filed a motion to compel the Hospital to disclose the records at issue, and a hearing was held on the matter. At the hearing, which occurred just days before the

---

1. Although the Flemings assert that the arbitration award was procured through "fraud, corruption or other undue means," their brief focuses solely on the charge of fraud. Therefore, we address only the fraud allegation.

arbitration was scheduled to begin, the trial court ordered the Hospital to produce the requested records for the month of August 2001. However, the trial court did not require the Hospital to produce the records prior to arbitration, and the Flemings did not object to starting arbitration without the requested statistics.

¶ 4 At the arbitration hearing, Dr. Simper reiterated his deposition testimony: "Q. Now you stated that a third of the patients that you send home from the hospital are sent home on [oxygen]? A. It's a rough estimate. I don't have any exact figures, but that wouldn't surprise me, yes." Three months after the arbitration was completed, the Flemings received their requested discovery from the Hospital. The records covered thirty-eight gastric bypass procedures completed by Drs. Simper and Halversen during August 2001. Of the thirty-eight patients, the Flemings claim only five, or thirteen percent, were discharged on home oxygen.[2] Based on the Hospital records from August 2001, the Flemings assert that Dr. Simper provided perjured testimony at the arbitration proceedings when he stated that approximately thirty to forty percent of his post-gastric bypass patients are discharged with supplemental oxygen. The Flemings also assert that the arbitration award should be overturned because the perjured testimony was material to the arbitration panel's (the Panel) decision and the statistics were not discoverable prior to the arbitration.[3]

2. The parties dispute the percentage of patients discharged on home oxygen. The Flemings claim Drs. Simper and Halversen released five patients, or thirteen percent, on home oxygen in August 2001. Dr. Simper, however, asserts that of the thirty-eight patients from August 2001, only eighteen were his, and of those eighteen, three, or seventeen percent were discharged on home oxygen. Because we conclude that the exact statistic is not determinative in this case, we rely on the Flemings' statistic only for convenience.

3. At the trial court, the Flemings presented the same evidence and made the same arguments as they advance on appeal.

4. At oral argument, the Flemings urged this court to adopt an "appearance of fraud" standard based on the supreme court's holding in *DeVore v. IHC Hosps., Inc.*, 884 P.2d 1246, 1253–56 (Utah 1994). *See id.* (discussing an "appear-

## ISSUE AND STANDARD OF REVIEW

 ¶ 5 In reviewing a district court's order confirming an arbitration award, "we grant no deference to the [district] court's conclusions of law, reviewing them for correctness. We review the district court's findings of fact under the clearly erroneous standard." *Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 12, 1 P.3d 1095. "Our 'scope of review is limited to the legal issue of whether the trial court correctly exercised its authority in confirming, vacating, or modifying an arbitration award.'"[4] *Id.* (quoting *Intermountain Power Agency v. Union Pac. R.R. Co.*, 961 P.2d 320, 323 (Utah 1998)).

## ANALYSIS

 ¶ 6 The Flemings argue that the trial court order confirming the arbitration award should be reversed because Dr. Simper perjured himself and, therefore, the arbitration award was procured through fraud. Utah Code section 78–31a–14 states that a court "shall vacate [an arbitration] award if it appears [that] ... the award was procured by corruption, fraud, or other undue means." Utah Code Ann. § 78–31a–14(1)(a) (2002) (repealed 2003). Although Utah courts have not defined fraud in the context of arbitration awards, several other courts have, and in doing so, have held that "[o]btaining an award by perjured testimony constitutes fraud." *Dogherra v. Safeway Stores, Inc.*,

ance of partiality" standard). Because the Flemings raised this argument for the first time at oral argument, and because we conclude that *DeVore* is inapplicable in the context of fraud, we decline to apply an "appearance of fraud" standard to the facts of this case. *See State v. Babbell*, 770 P.2d 987, 994 (Utah 1989) ("It is generally inappropriate to raise issues at oral argument that have not been designated as issues on appeal in a docketing statement or in the briefs."). For clarification, however, we note that the court in *DeVore* rejected the appearance of partiality standard and adopted, instead, a reasonableness standard. *See DeVore*, 884 P.2d at 1254–56 (rejecting an appearance of partiality standard because, among other reasons, it "sets an impractically low threshold," and concluding that "both the arbitration process and the judiciary will be better served by the flexibility inherent in a reasonableness standard.").

679 F.2d 1293, 1297 (9th Cir.1982); *see also Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 598 (3d Cir.1968) ("We may assume that the obtaining of an award by perjured testimony would constitute fraud"). Moreover, to demonstrate fraud, courts have held that the complaining party must establish, with clear and convincing evidence, that (1) the fraud was not discoverable upon the exercise of due diligence prior to the arbitration, and (2) the fraud materially relates to an issue in the arbitration. *See Dogherra*, 679 F.2d at 1297. Because we find this test instructive, we adopt it to determine if the arbitration award at issue was procured through fraud. In doing so, we affirm the trial court's order because the Flemings do not provide clear and convincing evidence of perjury. They also fail to demonstrate that Dr. Simper's testimony materially related to an issue in the arbitration and that the statistics were not discoverable prior to the proceedings.

¶ 7 The Flemings point to Dr. Simper's testimony that he discharges approximately one-third of his post-gastric bypass patients with home oxygen as evidence that he perjured himself because the Hospital's records for the month of August 2001 controverted that testimony. *See id.* The Tenth Circuit has held that to establish perjury, the complaining party must demonstrate "that a [witness] (1) while testifying under oath or affirmation, gave false testimony, (2) concerning a material matter, (3) *with willful intent to provide false testimony*, rather than as a result of confusion, mistake or faulty memory." *United States v. Medina–Estrada*, 81 F.3d 981, 987 (10th Cir.1996) (emphasis added); *see also Black's Law Dictionary* 1160 (7th ed.1999) (defining "perjury" as "[t]he act or an instance of a person's *deliberately making material false or misleading statements* while under oath" (emphasis added)). In this instance, we are not persuaded that Dr. Simper committed fraud during the arbitration proceeding because the Flemings present no evidence demonstrating that he willfully provided false testimony. Instead, the record reflects that Dr. Simper provided an estimation, which, by its nature, is an approxima-

tion, a rough determination of a figure, not an exact assertion. *See Merriam–Webster's Collegiate Dictionary* 425–26 (9th ed.1998) (defining estimate as an approximation in value, or a rough determination of the size, nature, or extent of something).

¶ 8 Our conclusion is strengthened by the Fourth Circuit's holding in *United States v. Ellis*, 121 F.3d 908 (4th Cir.1997). There, the court held that a witness did not commit perjury when she overestimated her brother's height. The court explained that "[e]stimations ... are matters of perception, not fact.... [I]n the absence of conclusive proof that [the witness] actually knew how tall her brother was, the conflict between her testimony and other evidence presented at trial proves only that she was mistaken, not that she lied." *Id.* at 927. As was the case in *Ellis*, Dr. Simper's testimony was based on his perception, not on exact figures. In fact, Dr. Simper testified that he kept no records of the statistic at issue, and the Flemings acknowledge that fact without disputing it.

¶ 9 Furthermore, the Flemings base their perjury allegation on Hospital records for a one-month period of time. However, the question posed to Dr. Simper in his deposition was not similarly limited. In other words, the Flemings did not ask Dr. Simper, "During August 2001, how many of your patients did you discharge after gastric bypass surgery with home oxygen?" Rather, the Flemings asked, "Tell me how many patients of the patients that you discharge following bariatric surgery go home on oxygen?" In sum, Dr. Simper's testimony fails to constitute perjury because there is no evidence he wilfully provided false testimony, and his estimate was based on his perception, not on statistics he regularly kept.[5]

¶ 10 Next, the Flemings argue that the perjured testimony was material to the Panel's decision. *See Dogherra*, 679 F.2d at 1297. However, they provide no evidence on which to base this assertion. The Panel's decision was brief and did not include any findings of fact:

---

**5.** We refrain from characterizing Dr. Simper's testimony as a mistake because, given a larger sample of patients, it is possible that his estimation was correct.

While this was a close case, given the higher level of vigilance required in post-gastric bypass surgery, a majority of the panel was unwilling to accept the proposition that the discharge was inappropriate given the information that was available to Dr. Simper from the records and his examination. Nor did the panel accept that the standard of care prohibits any discharge where there is postoperative hypoxemia in an obese smoker.

Regarding the Panel's standard of care determination, the Flemings present no evidence indicating that Dr. Simper's testimony was the only testimony the Panel relied upon when making its determination.[6] In fact, at least two other people, Dr. Halversen and Shauna Francom, R.N., testified similarly. In contrast, the Flemings' expert, I. Michael Leitman, M.D., testified that in his practice, he never sends post-gastric bypass patients home with oxygen unless they had come into the hospital on oxygen. Because there was other testimony that corroborated, and even disputed, Dr. Simper's testimony, we conclude that the Flemings have not provided clear and convincing evidence that Dr. Simper's testimony was material to the arbitrator's decision.

¶ 11 Finally, the Flemings assert that although they exhibited due diligence, the Hospital's records were not discoverable before the arbitration. The record indicates that the Flemings first requested the documents from the Hospital approximately two months prior to the arbitration proceeding. Shortly thereafter, they filed a motion to compel, and the trial court ordered the Hospital to produce the documents, but did not require that it do so prior to the commencement of arbitration. The Flemings assert that they made numerous informal efforts to obtain these records earlier, but they provide no evidence or record citations demonstrating those efforts.

¶ 12 What remains is an assertion that the Flemings could not have obtained the records before arbitration because the trial court did not order the Hospital to provide them. We disagree. The Flemings state in their brief that in August 2004, "it became clear that evidence concerning the rate of patient discharge on supplemental oxygen after gastric bypass surgery would be important in the arbitration decision." Yet they waited approximately seven months before formally requesting the statistics from the Hospital. Even though the request was not made until a few months prior to arbitration, the Flemings could have sought to delay the arbitration proceedings until the information was produced. *See* Utah Code Ann. § 78–31a–14(d) (repealed 2003) ("[T]he court shall vacate the award if it appears: ... the arbitrators refused to postpone the hearing upon sufficient cause shown"). However, the Flemings did not request a delay, and they made no objection to the trial court's order, which allowed the Hospital to produce the statistics after arbitration had concluded. As a result, we are not persuaded by the Flemings' argument that the statistics were not discoverable through due diligence prior to the arbitration proceedings.

## CONCLUSION

¶ 13 We affirm the trial court's order upholding the arbitration award and dismissing with prejudice the case against Dr. Simper because the Flemings have failed to provide sufficient evidence of fraud. There is no clear and convincing evidence that Dr. Simper committed perjury; there is insufficient evidence that his testimony was material to the Panel's decision; and there is insufficient evidence to demonstrate that the Hospital's statistics were not discoverable prior to the start of arbitration.

¶ 14 WE CONCUR: CAROLYN B. McHUGH and WILLIAM A. THORNE JR., Judges.

---

6. In the "materiality" section of their brief, the Flemings raise additional allegations of perjury: "The false dispute propounded by Simper is that he DID NOT KNOW and the nurses DID NOT TELL HIM of the low oxygen saturations at discharge." However, they provide no citations to the record for these assertions, and we conclude that even if true, they are not relevant to the materiality determination.