267 P.3d 683

**David T. LOW, Plaintiff–Appellee,**

v.

**Marie MINICHINO, Defendant–Appellant.**

**No. 28980.**

Intermediate Court of Appeals of Hawai'i.

Sept. 29, 2011.

**102**

Gary Victor Dubin (Long H. Vu with him on the brief), for Defendant–Appellant.

Meyer M. Ueoka, for Plaintiff–Appellee.

NAKAMURA, C.J., and LEONARD, J; and GINOZA, J., dissenting.

Opinion of the Court by LEONARD, J.

Defendant–Appellant Marie Minichino (**Minichino**) appeals from the December 26, 2007 Judgment entered by the Circuit Court of the Second Circuit (**Circuit Court**) on: (1) an Order Denying Motion to Vacate Arbitration Award and for Fees and Costs; and (2) an Order Confirming Arbitration Award.[1]

1. The Honorable Shackley F. Raffetto presided.

The Circuit Court denied Minichino's motion to vacate an arbitration award on the basis of fraud and confirmed the arbitration award in favor of Plaintiff–Appellee David T. Low (**Low**).

On appeal, Minichino maintains that the Circuit Court erred in failing to vacate the award for fraud, or violation of public policy, resulting from Low's alleged perjury at the arbitration hearing. In the alternative, she contends that the court erred in failing to grant an evidentiary hearing concerning the allegation of fraud. We conclude that because Minichino presented evidence establishing a *prima facie* case of fraud, the Circuit Court erred in failing to hold an evidentiary hearing and failing to issue findings of fact and conclusions of law.

### I. BACKGROUND

This dispute arises out of Minichino's cancellation of a real property purchase agreement (Deposit Receipt Offer and Acceptance or **DROA**). On May 26, 2002, Minichino, a licensed realtor, entered into a DROA to purchase residential property from Low. The DROA contained a financing contingency allowing Minichino to terminate the contract on or before June 25, 2002, if she was unable to secure financing for the purchase. Under the DROA, if a party elected to terminate the contract, then "(a) Buyer or Seller shall promptly execute all cancellation documents requested by Escrow; and (b) Escrow shall return to Buyer all deposits previously made, less the amount of any escrow expenses or fees chargeable to Buyer." It further provided, "Any termination shall be in writing and delivered to Escrow to be effective."

Minichino was unable to secure financing to purchase the property as she apparently did not qualify for the requisite mortgage. On June 20, 2002, Minichino purchased a different, less-expensive, residential property.

On February 12, 2004, Low filed the complaint herein alleging that Minichino breached the DROA by failing to purchase the property. The Circuit Court compelled bind-

ing arbitration pursuant to the terms of the DROA.

After a November 3, 2006 hearing, on May 7, 2007, the arbitrator issued an award in favor of Low. The arbitrator found that Minichino did not advise Low of her desire to cancel the DROA until "sometime after July 24, 2002, at or near the time of the scheduled closing." He concluded:

. . . .

2. As a licensed realtor, Defendant would have the requisite knowledge and experience to terminate a purchase, should it become apparent that she could not obtain the financing she required to complete the purchase. Those procedures are contained in the DROA (par. C20–21).

3. The Plaintiff relied upon the Defendant's status as a licensed realtor in allowing her to draft the DROA and complete the purchase.

4. Rather than keep the Plaintiff advised of the difficulties she was having in completing financing, there is no evidence that Defendant communicated with Plaintiff, or even attempted to communicate, those difficulties. She did not ask for an extension of closing, in writing.

5. There is no evidence that the Defendant availed herself of the termination provisions contained in the DROA, or gave Plaintiff any notice of her intent not to purchase the Property.

6. Instead, Plaintiff was left with the understanding that the Defendant was continuing with her efforts to complete the purchase of the Property, and he gave her additional time.

7. In the meantime, Defendant purchased a less expensive property in Paia.

8. Defendant testified that she could not recall many of the events regarding the purchase of the property. She did not recall receiving service of process for the instant action. Because of such testimony, the Arbitrator find[s] much of the Defendant's testimony not credible.

9. While Defendant did not qualify for the loan required to complete the purchase, because of her failure to keep Plaintiff appraised of the status of her failed efforts to clear her credit report; his ongoing reliance on her efforts to obtain financing; and her failure to give notice of termination, Defendant is estopped from asserting the failed financing contingency.

10. Defendant's action[s] place her in breach of the DROA.

The arbitrator awarded Low damages, attorney's fees, and costs totaling $83,964.70.

On May 11, 2007, Low filed a motion to confirm the arbitration award. On August 3, 2007, Minichino filed a motion to vacate the award on the ground that it had been procured by fraud—namely, Low's perjured testimony. In a declaration, she attested that at the arbitration hearing, she testified that she gave both oral and written notice, via email, to Low terminating the DROA but Low gave contrary testimony. She further averred that she had been previously unable to locate copies of the e-mails due to extensive flood damage to her files and computer hard drive, when her residence flooded on December 31, 2004, and again on October 16, 2006. Low allegedly "lied" at the arbitration, testifying that no such e-mails had been sent to him. Low did not submit any sworn statement in the Circuit Court proceeding.

After entry of the arbitration award, Minichino was able to locate copies of the e-mails she had sent to Low. The e-mails, dated from June 21 to 23, 2002, state Minichino's inability to secure financing and her cancellation of the DROA.[2] They urge Low to stop threaten-

---

2. An email from Minichino to Low, dated June 21, 2002, states in full:

Please try to be reasonable and understand that my cancellation of the Droa [sic] is out of my hands. This is for your benefit and enables you to sell the home to your backup offers. I understand you are upset, I had school plans for my son. I cannot get the loan needed to buy your home. Can you understand this is for your benefit to move on. Becky [the loan officer] tried but got only 1/2 the amount of the loan approved. Swearing and screaming at me does not change what occurred here. We agreed I could not get an extention [sic] if the lender did not request it and she cannot. She cannot get me the loan. Call your backups tonight and get an escrow open, use my appraisal and inspections and get your home closed. If I could do something different I would. She tried several lenders and she can-

ing and harassing Minichino for her inability to complete the transaction. In support of her motion, Minichino also submitted extensive documentation of the flood damage to her property, including damage to her computer.

In the Circuit Court proceedings, Low did not deny his alleged testimony at the arbitration hearing, nor did he deny that he received the e-mails. However, his attorney attested that "at no time during the [arbitration] hearing did the Defendant mention that her evidence was lost because of [a] flood, nor did she make any request for adjournment of the hearing to allow her to look for the evidence." Low objected to the e-mails on the basis that Minichino had ample time to discover any such evidence during arbitration. He argued that Minichino waived any right to introduce new evidence by failing to request a postponement during arbitration to locate the e-mails.

At the hearing on the motion to vacate, the Circuit Court concluded that Minichino failed to establish fraud. The court denied Minichino's request to hold an evidentiary hearing. On December 26, 2007, the court issued orders confirming the award, denying Minichino's motion to vacate, and entered final judgment. Minichino timely filed a notice of appeal.

## II. POINTS OF ERROR

Minichino asserts the following points of error on appeal:

(1) The Circuit Court erred in failing to vacate the arbitration award on the basis of fraud, as required by Hawaii Revised Statutes (**HRS**) § 658A–23 (Supp. 2001); [3]

(2) The Circuit Court erred in failing to hold an evidentiary hearing and in failing to issue findings of fact and conclusions of law, as there were material facts in dispute as to whether the arbitration award was procured by fraud; and

(3) The Circuit Court erred in confirming an arbitration award that was contrary to established public policy against perjury and fraud.

## III. APPLICABLE STANDARDS OF REVIEW

█ The appellate court reviews "the circuit court's ruling on an arbitration award *de novo*," but is "mindful that the circuit court's review of arbitral awards must be extremely narrow and exceedingly deferential." *Tatibouet v. Ellsworth*, 99 Hawai'i 226, 233, 54 P.3d 397, 404 (2002) (internal quotation marks, citations, and brackets omitted).

---

not get the loan I need to close on your house. Please stop calling me and screaming at me. There is nothing else I can do. I am as sad as you are about [sic]. You must accept my cancellation of the droa [sic] and move on so you can move to your fiancee. Please call Becky and confirm the loan amount I can get. You have her info.

Another email, dated June 23, 2002, states in part: "This email is to confirm our verbal conversation about my inability to purchase your property per the purchase contract." The email states that Minichino could not obtain financing and urges Low to find another buyer.

3. This statute provides, in relevant part:

§ **658A–23 Vacating award.** (a) Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:

(1) The award was procured by corruption, fraud, or other undue means;

(2) There was:

(A) Evident partiality by an arbitrator appointed as a neutral arbitrator;

(B) Corruption by an arbitrator; or

(C) Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;

(3) An arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 658A–15, so as to prejudice substantially the rights of a party to the arbitration proceeding;

. . . .

(c) If the court vacates an award on a ground other than that set forth in subsection (a)(5), it may order a rehearing. If the award is vacated on a ground stated in subsection (a)(1) or (2), the rehearing shall be before a new arbitrator. If the award is vacated on a ground stated in subsection (a)(3), (4), or (6), the rehearing may be before the arbitrator who made the award or the arbitrator's successor. The arbitrator shall render the decision in the rehearing within the same time as that provided in section 658A–19(b) for an award.

Arbitration awards are entitled to considerable deference for the following reasons:

First, because of the legislative policy to encourage arbitration and thereby discourage litigation, arbitrators have broad discretion in resolving the dispute. Upon submission of an issue, the arbitrator has authority to determine the entire question, including the legal construction of terms of a contract or lease, as well as the disputed facts. In fact, where the parties agree to arbitrate, they thereby assume all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact.

Second, correlatively, judicial review of an arbitration award is confined to the strictest possible limits. An arbitration award may be vacated only on the four grounds specified in HRS § 658[A]–9 and modified and corrected only on the three grounds specified in HRS § 658[A]–10. Moreover, the courts have no business weighing the merits of the award.

*Schmidt v. Pac. Benefit Servs., Inc.,* 113 Hawai'i 161, 165–66, 150 P.3d 810, 814–15 (2006) (citation omitted). This narrow and deferential review applies equally to arbitration awards subject to HRS § 658A. *See, e.g., Mikelson v. United Servs. Auto. Ass'n,* 122 Hawai'i 393, 395–96, 227 P.3d 559, 560–61 (App.2010) (citations omitted).

## IV. DISCUSSION

### A. Grounds for Vacating the Arbitration Award

Minichino argues that the award was procured by fraud because the arbitrator's resolution of a central issue—whether she provided Low with written notice of her cancellation—turned on Low's allegedly perjured testimony. Her argument requires us to analyze the scope of the statute mandating vacatur of arbitral awards for fraud. HRS § 658A–23(a)(1).

As noted above, judicial review of arbitration awards is confined to the "strictest possible limits." *Mars Constructors, Inc. v. Tropical Enters., Ltd.,* 51 Haw. 332, 335, 460 P.2d 317, 319 (1969). This limited review derives from "legislative policy to encourage arbitration and thereby discourage litigation." *Tatibouet,* 99 Hawai'i at 233, 54 P.3d at 404 (internal quotation marks and citation omitted).

In general, courts may not review the merits of an arbitration award or overturn an award on the basis of newly discovered evidence. *See Kona Village Realty, Inc. v. Sunstone Realty Partners, XIV, LLC,* 121 Hawai'i 110, 112–13, 214 P.3d 1100, 1102–03 (App.2009). However, Hawai'i's Uniform Arbitration Act provides certain grounds for which the court "*shall* vacate" an arbitration award. HRS § 658A–23(a) (emphasis added). One such ground is where the "award was procured by corruption, fraud, or other undue means." HRS § 658A–23(a)(1). Because of the sound policies underlying the finality of arbitration awards and limited judicial review, courts must, nevertheless, be slow to vacate an arbitration award on the ground of fraud. *See, e.g., Dogherra v. Safeway Stores, Inc.,* 679 F.2d 1293, 1297 (9th Cir.1982) (holding that obtaining an arbitration award by perjured testimony constitutes fraud; remanding to district court for determination of whether there was clear and convincing evidence of fraud, which went to a material issue, and which could not upon the exercise of due diligence have been discovered prior to the arbitration).

Hawai'i courts have not addressed whether perjury in an arbitration hearing may constitute fraud sufficient to vacate an award. However, in the absence of binding case law, we may look to federal courts for guidance. *Price v. Obayashi Haw. Corp.,* 81 Hawai'i 171, 181, 914 P.2d 1364, 1374 (1996); *see also Kay v. Kaiser Found. Health Plan, Inc.,* 119 Hawai'i 219, 226–27, 194 P.3d 1181, 1188–89 (App.2008) (discussing approach of federal courts to evident partiality ground for vacatur).

Low contends that awards may be vacated only for "extrinsic fraud." Because perjury is "intrinsic fraud," he argues, it is an inadequate basis for vacatur. The extrinsic/intrinsic distinction has arisen in the context of motions for post-judgment or post-arbitration relief based on fraud, misrepre-

sentation, or misconduct. *Pac. Crown Distribs. v. Bhd. of Teamsters & Auto Truck Drivers, Local 70*, 183 Cal.App.3d 1138, 228 Cal.Rptr. 645, 650 (1986) (applying extrinsic/intrinsic distinction to arbitration award); *Pour Le Bebe, Inc. v. Guess? Inc.*, 112 Cal. App.4th 810, 5 Cal.Rptr.3d 442, 457–58 (2003) (discussing that courts take a more lenient approach when examining intrinsic fraud in the context of arbitration because parties' procedural rights are limited); *MBNA Am. Bank., N.A. v. Garcia*, 227 Or.App. 202, 205 P.3d 53, 56 (2009) (vacatur of arbitration award limited to extrinsic fraud based on Oregon rule similarly limiting post-relief judgment); *Jacobowitz v. Herson*, 268 N.Y. 130, 197 N.E. 169, 171 (1935) (precluding attack on arbitration award procured by perjury based on similar treatment of judgments after trial in a court action). Extrinsic fraud occurs when a party unfairly prevents another from obtaining a fair hearing or presenting a full claim or defense. *Pour Le Bebe, Inc.*, 5 Cal.Rptr.3d at 457. Intrinsic fraud includes perjury, falsified evidence, and other false claims or defenses arising during the course of litigation or arbitration. *Id.* at 458. Due to the nature of the adversary process, some courts reason that a trial is generally a party's sole opportunity to confront intrinsic perjury. *Id.* Parties "must be prepared to meet and expose perjury then and there." *Id.* (internal quotation marks and citation omitted). The stability of final judgments would be undermined if courts could freely set aside judgments for a party's failure to exert diligent efforts in refuting intrinsic fraud at trial. *Id.*

▮ Several jurisdictions, including Hawaiʻi, have abrogated the distinction between extrinsic and intrinsic fraud in the context of post-judgment motions for relief based on fraud. *See* James O. Pearson, Jr., *Fraud in Obtaining or Maintaining Default Judgment as Ground for Vacating or Setting Aside in State Courts*, 78 A.L.R.3d 150, § 2A (1977) (noting that Federal Rules of Civil Procedure, and several state provisions patterned after them, have abolished distinction); Federal Rules of Civil Procedure Rule 60(b)(3). Post-judgment motions may now seek relief for both extrinsic and intrinsic fraud, such as perjury. Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 60(b)(3) (establishing fraud, "whether heretofore denominated intrinsic or extrinsic," as ground for post-judgment relief); *see, e.g., Kawamata Farms, Inc. v. United Agri Prods.*, 86 Hawaiʻi 214, 255–57, 948 P.2d 1055, 1096–98 (1997) (setting aside judgment based on discovery fraud).

▮ The policy considerations underlying the "extrinsic fraud" rule have little application in the context of arbitration awards. *Pour Le Bebe*, 5 Cal.Rptr.3d at 458. Arbitration affords far fewer procedural protections than civil litigation. *Id.* Due to the lack of extensive discovery or appeal, applying the "extrinsic fraud" rule to arbitration awards would nearly vitiate a party's ability to vacate an award for fraud. *Id.* The plain language of HRS § 658A–23(a)(1) does not limit "fraud" to that of an extrinsic nature.

▮ A number of state and federal courts, interpreting provisions identical to HRS § 658A–23(a), have recognized that perjury may constitute fraud sufficient to vacate an award. *See, e.g., Dogherra*, 679 F.2d at 1297 ("Obtaining an award by perjured testimony constitutes fraud.").[4] Courts have widely adopted a three-pronged test for determining when fraud constitutes a basis for vacating an award. *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th

---

4. *See also Karppinen v. Karl Kiefer Mach. Co.*, 187 F.2d 32, 34 (2d Cir.1951) (assuming arbitration award may be set aside for material perjury); *accord Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 598 (3d Cir.1968); *Int'l Bhd. of Teamsters, Local 519 v. United Parcel Serv., Inc.*, 335 F.3d 497, 503–04 (6th Cir.2003) (recognizing that material perjury may constitute fraud); *accord MidAmerican Energy Co. v. Int'l Bhd. of Elec. Workers Local 499*, 345 F.3d 616, 622–23 (8th Cir.2003); *Bonar v.* *Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 n.7 (11th Cir.1988) ("There is no doubt that perjury constitutes fraud within the meaning of the Arbitration Act."); *Pour Le Bebe, Inc.*, 5 Cal. Rptr.3d at 459; *Davenport v. Dimitrijevic*, 857 So.2d 957, 962 (Fla.Dist.Ct.App.2003); *Medina v. Found. Reserve Ins. Co., Inc.*, 123 N.M. 380, 940 P.2d 1175, 1179 (1997); *Trident Technical Coll. v. Lucas & Stubbs, Ltd.*, 286 S.C. 98, 333 S.E.2d 781, 787 (1985); *Fleming v. Simper*, 158 P.3d 1110, 1112–13 (Utah Ct.App.2007); *Seattle Packaging Corp.*, 972 P.2d at 579.

Cir.1988).[5] First, the movant must establish the fraud by clear and convincing evidence. Second, the fraud must not have been discoverable, upon the exercise of due diligence, prior to or during arbitration. Third, the movant must demonstrate that the fraud had a material effect on a dispositive issue in the arbitration. *Bonar,* 835 F.2d at 1383; *Dogherra,* 679 F.2d at 1297.[6] "In the absence of a prima facie showing with respect to these factors, the court is not empowered to assess evidence, much less new evidence that was not timely submitted to the arbitrators, in responding to a request for vacatur." *Seattle Packaging Corp.,* 972 P.2d at 579.

■■■■■■ These elements ensure that the various policies underlying finality of arbitration awards and limited judicial review will not be eroded. By requiring clear and convincing evidence, the *Bonar* test places a high burden upon the movant to establish fraud. Courts may not vacate an award for mere inconsistencies in testimony. *See id.* at 581–83. Where the alleged fraud is based on perjured testimony, the movant must establish that the witness "wilfully, knowingly, and falsely" stated some material fact under oath. *Territory v. Kaahanui,* 29 Haw. 827, 829

(Haw.Terr.1927). Testimony that reflects an opinion or approximation as well as testimony that is not *willfully* false will not give rise to a potential ground for vacatur. *Fleming,* 158 P.3d at 1113.

■■■■■■ The second element prevents the movant from taking a "second bite at the apple" if the fraud could have been discovered at arbitration. *A.G. Edwards & Sons, Inc. v. McCollough,* 967 F.2d 1401, 1404 (9th Cir.1992). If the movant could have rebutted the adversary's claims or evidence at arbitration, the scales will tip in favor of preserving the award's finality. *Karaha Bodas Co.,* 364 F.3d at 307; *Karppinen,* 187 F.2d at 35. Similarly, courts may not vacate an award if the arbitrator fully considered the parties' evidence and arguments regarding the alleged fraud. *A.G. Edwards & Sons, Inc.,* 967 F.2d at 1404; *Pac. Crown Distribs.,* 228 Cal.Rptr. at 650–51; *Seattle Packaging Corp.,* 972 P.2d at 581 ("a reviewing court should not vacate the arbitration award if the movant presented the evidence of perjury to the arbitrators"). A challenge on the basis of fraud therefore cannot amount to a mere attack on the arbitrator's credibility determination.

5. *See also Karppinen,* 187 F.2d at 35 (requirement that evidence was not discoverable at arbitration); *MCI Constructors, LLC v. City of Greensboro,* 610 F.3d 849, 858 (4th Cir.2010); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 364 F.3d 274, 306–07 (5th Cir.2004); *United Parcel Serv.,* 335 F.3d at 503; *Shearson Hayden Stone, Inc. v. Liang,* 653 F.2d 310, 313 (7th Cir.1981) (due diligence requirement); *MidAmerican Energy Co.,* 345 F.3d at 622; *Dogherra,* 679 F.2d at 1297; *Foster v. Turley,* 808 F.2d 38, 42 (10th Cir.1986); *Int'l Bhd. of Teamsters, Local 701 v. CBF Trucking, Inc.,* No. Civ. 09–5525, slip op. at 2, 2010 WL 2400400 (D.N.J. June 10, 2010); *Pour Le Bebe, Inc.,* 5 Cal.Rptr.3d at 458–59 (in dictum); *Davenport,* 857 So.2d at 961; *Imgest Finance Estab. v. Shearson Lehman Hutton, Inc.,* 172 A.D.2d 291, 568 N.Y.S.2d 104, 105 (N.Y.App.Div.1991); *Roehrs v. FSI Holdings, Inc.,* 246 S.W.3d 796, 810–11 (Tex.Ct.App.2008); *Fleming,* 158 P.3d at 1113; *Seattle Packaging Corp.,* 972 P.2d at 579; *Steichen v. Hensler,* 283 Wis.2d 755, 701 N.W.2d 1, 6–7 (App.2005); *Welty v. Brady,* 123 P.3d 920, 924–26 (Wyo.2005) (clear and convincing evidence required to show fraud based on perjury).

6. As discussed below, the Hawai'i Arbitration Act, like the federal arbitration statute, requires

that the party seeking vacatur of an arbitration award, based on fraud, demonstrate that the award was *procured* by fraud. *See* HRS § 658A–23(a)(1). Some courts have distinguished or criticized *Bonar* for its formulation of this third element (*see, e.g., Thomas Kinkade v. Hazlewood,* 2007 WL 2088584 (N.D.Cal.2007)) and, in our discussion of this element, we have attempted to provide a clear standard which does not quote *Bonar* verbatim. However, given the deference that Hawai'i courts give to an arbitration award, even if the arbitrator commits a legal error or bases the award on clearly erroneous facts, it appears that it would be virtually impossible to demonstrate that the outcome of an arbitration *would have* been different had the fraud not occurred. *See, e.g., Tatibouet,* 99 Hawai'i at 236, 54 P.3d at 407. Thus, we recognize the rigorous standard of proof of clear and convincing evidence of fraud, and require that the fraud be material to and have a substantial and causative effect on a dispositive issue, but we decline to state this element in absolutist terms. That said, under the procured-by-fraud standard, if a reviewing court determines that the arbitration award may be construed to be grounded in other, non-fraudulent, evidence, the motion to vacate must be denied.

Finally, the third element of the *Bonar* test limits vacatur to cases where the award was *"procured by ... fraud."* HRS § 658A–23(a)(1) (emphasis added); *see also Crye–Leike, Inc. v. Thomas,* 196 F.Supp.2d 680, 685 (W.D.Tenn.2002) (interpreting identical provision of Federal Arbitration Act). The movant must demonstrate a nexus between the alleged fraud and the arbitral outcome. *Pour Le Bebe,* 5 Cal.Rptr.3d at 462. Where fraud concerns only a minor or collateral issue that did not influence the arbitrator's decision, it is insufficient to support a vacatur. *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas,* 915 F.2d 1017, 1022 (5th Cir.1990) ("where the [arbitration] panel hears the allegation of fraud and then rests its decision on grounds clearly independent of issues connected to the alleged fraud, the statutory basis for vacatur is absent"); *see also Peabody v. Rotan Mosle, Inc.,* 677 F.Supp. 1135, 1137–38 (M.D.Fla.1987) (insufficient nexus where perjured testimony related to minor issue and did not affect outcome). Because arbitrators are generally not required to state their reasons for the award, the burden is on the movant to demonstrate that the fraud was material to the arbitration award. *See* R.D. Hursh, *Necessity that Arbitrators, in Making Award, Make Specific or Detailed Findings of Fact or Conclusions of Law,* 82 A.L.R.2d 969, § 2[a] (1962) ("It seems established beyond peradventure that ... an arbitration award need not recite the arbitrator's findings of fact or conclusions of law."); *A.G. Edwards & Sons, Inc.,* 967 F.2d at 1403 (noting that courts must presume arbitrators "took a permissible route to the award where one exists"); *see also* n. 6 above.[7]

This three-prong test sets a high standard in order to deter motions that merely seek to relitigate issues that were already—or could have been—presented to the arbitrator. The test therefore preserves the parties' bargain for the judgment of an arbitrator. *Morrison–Knudsen Co. v. Makahuena Corp.,* 66

Haw. 663, 670, 675 P.2d 760, 766 (1983) (parties to arbitration agreement bargained for arbitrator's decision). At the same time, it offers relief for parties whose bargain does not extend to a determination procured by fraud. Accordingly, we conclude that, in narrow circumstances articulated above, perjury may constitute a basis for vacating an arbitration award.

### B. *As Material Facts Were in Dispute, An Evidentiary Hearing Was Required*

In *Clawson v. Habilitat, Inc.,* 71 Haw. 76, 79–80, 783 P.2d 1230, 1232 (1989), the Hawai'i Supreme Court held that "whenever material facts are in dispute in determining whether an arbitration award should be vacated, the circuit court should conduct an evidentiary hearing and render findings of fact and conclusions of law in support of granting or denying the motion to vacate the arbitration award." Not every motion to vacate a arbitration award, whether based on fraud or otherwise grounded, warrants an evidentiary hearing and the entry of findings of fact and conclusions of law. *Id.* In this case, however, as it appears that Minichino made a *prima facie* showing that the arbitration award was procured by fraud, and because material issues of fact are unresolved, without proper findings of fact and conclusions of law, we cannot determine whether the Circuit Court erred in denying Minichino's motion. *See id.*

As set forth above, to establish the grounds for vacatur, Minichino has the burden to demonstrate: (1) clear and convincing evidence of fraud; (2) that the fraud was not discoverable, upon the exercise of due diligence, prior to or during the arbitration; and (3) that the fraud was material to and had a substantial and causative effect on a dispositive issue in the arbitration.

**7.** The three-pronged test is consistent with our approach to vacating judgments for alleged fraud. *See* HRCP Rule 60(b)(3). Such fraud may encompass both extrinsic and intrinsic types. *Id.* To raise a collateral action for fraud upon the court, the movant must (1) prove by clear and convincing evidence that the verdict was procured by fraud, and (2) establish that the

fraud prevented the movant from fully and fairly presenting his or her case. *Kawamata Farms, Inc. v. United Agri Prods.,* 86 Hawai'i 214, 252, 948 P.2d 1055, 1093 (1997). This high burden preserves the finality of judgments. *Standard Mgmt., Inc. v. Kekona,* 98 Hawai'i 95, 99–100, 43 P.3d 232, 236–37 (App.2001) (recognizing high standard).

Minichino presented uncontroverted evidence that, if taken as true, establishes that Low committed fraud by presenting perjured testimony to the arbitrator.[8] Minichino's declaration states, *inter alia:* "I testified that I gave both oral and written notice to the Seller prior to June 25, 2002, but the Arbitrator accepted the contrary testimony of the seller" and "[k]nowing that his testimony at the arbitration hearing was false, [Low] lied before the Arbitrator[.]" Minichino also submitted copies of dated emails that appear to evidence or at least raise a strong inference of Low's alleged perjury regarding Minichino's notification to Low that she could not obtain the financing necessary to close the transaction. Low did not submit any

contrary evidence, and he did not dispute Minichino's allegation that he testified at the arbitration hearing that Minichino did not give him notice of termination. The e-mails submitted by Minichino would directly contradict any testimony by Low denying his receipt of notice of termination. However, as the Circuit Court did not hold an evidentiary hearing and issued no findings of fact, we cannot conclude from the limited record whether Minichino has established fraud by clear and convincing evidence.[9]

Regarding whether Minichino exercised due diligence in the discovery of the e-mails, Minichino attested that she had been unable to previously locate the e-mails because of

8. In *Bonar*, the Eleventh Circuit Court of Appeals concluded that newly discovered evidence of perjury warranted vacating an award. *Bonar*, 835 F.2d at 1384–86. After the arbitration, the losing party discovered that the opposing party's expert witness had falsified his credentials. *Id.* at 1381. As clear and convincing evidence of perjury, the movant submitted letters and affidavits confirming that the witness had not graduated from or worked at the institutions he claimed. *Id.* at 1384. Because the arbitration rules did not provide for a pre-hearing exchange of witness lists, the movant did not know the witness would testify until the day of the hearing. *Id.* The movant could not have uncovered the evidence of perjury earlier. *Id.* Finally, the court concluded that if the witness had not falsified his credentials, "it is extremely doubtful that he would have been permitted to testify as an expert, and the arbitrators would have heard none of [his] testimony." *Id.* at 1385.

The Sixth Circuit Court of Appeals has also recognized that an award may be vacated on the basis of newly discovered evidence of perjury. *United Parcel Serv.*, 335 F.3d at 503–04. The arbitration involved an employee's termination for allegedly physically assaulting another employee. *Id.* at 500–01. After the award in favor of the employer, the victim submitted an affidavit contradicting her previous statement. *Id.* at 502. Although the arbitrator did not find that the employee engaged in physical violence, the court concluded that the perjury was "clearly connected to an issue material to the arbitration." *Id.* at 503–04. Because the arbitrator relied heavily on the victim's testimony, the perjury may have impacted the findings as well as relief. *Id.* at 504. However, as the recantation merely contradicted the witness's own prior testimony, the appellate court declined to find clear and convincing evidence of fraud on appeal. *Id.* at 504 n.4. Instead, it remanded to the district court for a determination of whether the affidavit constituted clear and convincing evidence of perjury. *Id.* at 504.

The Eighth Circuit Court of Appeals reached a similar conclusion in *MidAmerican Energy Co.* There, MidAmerican fired a security guard at its natural gas facility after he left his post in the middle of a shift, contrary to safety policies and state and federal regulations. 345 F.3d at 618. At the arbitration hearing, the employee testified that he left work because of a family emergency, and his wife corroborated that testimony. *Id.* The arbitrator found the employee credible and reinstated him. *Id.* at 618–19. However, after the award was rendered, MidAmerican received an anonymous tip that the employee had lied about the family emergency. *Id.* at 619. This lead culminated in the deposition testimony of a woman who attested she had been engaged in an extramarital affair with the employee on the night he left his shift. *Id.* On appeal, the court recognized that the woman's deposition testimony, if credited, would compel the conclusion that the award was procured by fraud. *Id.* at 622. The arbitrator's decision was expressly premised on his credibility determination of the employee's testimony. *Id.* at 622–23. However, because the evidence merely demonstrated an inconsistency in testimony, the court remanded for a determination of whether the deposition constituted clear and convincing evidence of perjury. *Id.* at 623; *see also CBF Trucking, Inc.*, slip op. at 3–4 (D.N.J.2010) (refusing to vacate an award where the newly discovered evidence was merely cumulative to the credibility evidence at arbitration).

9. At the hearing, the Circuit Court summarily concluded that Minichino had not established fraud. However, because the court did not hold an evidentiary hearing, the factual basis for this conclusion is not clear. Our inability to clearly discern the basis for the court's ruling supports requiring an evidentiary hearing and findings of fact, including findings concerning the alleged perjury in this case. On remand, at the evidentiary hearing, both parties will have an opportunity to present evidence and arguments on all three prongs of the test set forth herein.

extensive flood damage to her property on two occasions prior to the arbitration, including damage to her computer hard drive and files. She submitted documentation of the flood damage. The documentation noted damage to a computer. Although Minichino did not submit specific testimony as to how she eventually located the e-mails, her counsel stated at the hearing that he urged her to "go over and look at the file several more times, including other files that related theoretically to this transaction, and she did find one e-mail and two others." Minichino's evidence raises an issue of material fact as to whether she could have located the e-mails, upon the exercise of due diligence, prior to or during arbitration.

Lastly, Low's allegedly perjured testimony concerned whether Minichino informed Low of Minichino's inability to secure financing, an issue that, arguably, was material to the arbitrator's decision in favor of Low. As reported above, the arbitration award states, *inter alia* :

. . . .

4. Rather than keep the Plaintiff advised of the difficulties she was having in completing financing, there is no evidence that Defendant communicated with Plaintiff, or even attempted to communicate, those difficulties. She did not ask for an extension of closing, in writing.

5. There is no evidence that . . . Plaintiff [had] any notice of [Defendant's] intent not to purchase the Property.

6. Instead, Plaintiff was left with the understanding that the Defendant was continuing with her efforts to complete the purchase of the Property, and he gave her additional time.

. . . .

9. While Defendant did not qualify for the loan required to complete the purchase, because of her failure to keep Plaintiff appraised of the status of her failed efforts to clear her credit report; his ongoing reliance on her efforts to obtain financing; and her failure to give notice of termination, Defendant is estopped from asserting the failed financing contingency.

The arbitrator expressly grounded his determination that Minichino could not assert her inability to obtain financing as a defense because of "her failure to keep [Low] apprised of the status" of her financing efforts and "[Low's] ongoing reliance on [Minichino's] efforts to obtain financing".[10] Thus, there is *prima facie* support for the required nexus between the alleged perjury and the arbitration award. However, as the Circuit Court did not enter findings of fact or conclusions of law concerning whether Low's allegedly perjured testimony had a material effect on a dispositive issue in the arbitration, we are unable to determine on appeal whether Minichino satisfied this requirement for vacatur or, alternatively, whether the Circuit Court properly denied Minichino's motion to vacate.

### C. *Minichino's Public Policy Argument*

■ Minichino also contends that the Circuit Court erred in failing to vacate the arbitration award under the "public policy" doctrine. She asserts that the award violates a dominant public policy against perjury and fraud on the court. We disagree.

Hawai'i courts have adopted a narrow ground for setting aside arbitration awards that violate public policy. *Inlandboatmen's Union of the Pac. v. Sause Bros., Inc.*, 77 Hawai'i 187, 193–94, 881 P.2d 1255, 1261–62 (App.1994). This limited exception to deferential review is rooted in courts' common law duty to refrain from enforcing illegal contracts. *Id.* at 194, 881 P.2d at 1262. As a result, it is generally invoked only when there is an " 'explicit conflict' between the arbitration award and the statute." *Id.* at 196, 881 P.2d at 1264 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)).

■ To vacate an arbitration award on this ground, the movant must establish that: "(1) the award would violate some explicit public policy that is well defined and dominant, and that is ascertained by reference to the laws and legal precedents and not from

---

10. In addition, it appears that the arbitrator's award of damages is grounded in Low's "timely steps" to mitigate his damages upon discovery that Minichino could not obtain financing.

general considerations of supposed public interests, and (2) the violation of the public policy is clearly shown." *Id.* at 193–94, 881 P.2d at 1261–62 (citation, internal quotation marks, brackets, and ellipses omitted; punctuation altered). In addition, the movant must establish that the policy "specifically militates against the relief ordered by the arbitrator." *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173 Int'l Assoc. of Machinists,* 886 F.2d 1200, 1212–13 (9th Cir.1989).

Here, Minichino has failed to allege or establish that the award itself—i.e., awarding damages in favor of Low—violates any public policy. She has alleged that the arbitrator's findings and conclusions were tainted by Low's perjury. The statutory grounds embodied in HRS § 658A–23(a) provide sufficient recourse to vacate awards for fraud, including perjury. The public policy exception is inapplicable in this case.

## V. *CONCLUSION*

For these reasons, we vacate the Circuit Court's December 26, 2007 Judgment and remand this case for an evidentiary hearing and for entry of findings of fact and conclusions of law.

Dissenting Opinion by GINOZA, J.

There is much in the majority opinion with which I agree. In particular, I agree that it is appropriate to adopt the three-part test which has similarly been adopted by a number of federal courts and other jurisdictions to determine when fraud constitutes a basis to vacate an arbitration award. *See e.g., Bonar v. Dean Witter Reynolds, Inc.,* 835 F.2d 1378, 1383 (11th Cir.1988); *Seattle Packaging Corp. v. Barnard,* 94 Wash.App. 481, 972 P.2d 577 (1999).

I respectfully dissent, however, to the majority's determination that application of that test to the circumstances of this case raises material facts which require an evidentiary hearing. Each part of the test must be met, and I would conclude that Defendant–Appellant Marie Minichino (Minichino) has failed to make a showing that she meets the second part of the test. That is, Minichino has failed to show that the alleged fraud was not

discoverable prior to or during the arbitration upon the exercise of due diligence. To the contrary, Minichino's own declaration submitted to the Circuit Court of the Second Circuit (Circuit Court) establishes that she was well aware, during the arbitration hearing, of the alleged fraud she now contends should be the basis to vacate the arbitration award. Moreover, the evidence she now puts forth to prove the fraud are emails she authored and thus were in her control during the arbitration. Minichino simply was unable to locate the emails during the arbitration. Under these circumstances and the adopted test, there are no material facts in dispute that require the Circuit Court to conduct an evidentiary hearing.

### I. *Background*

In this real estate dispute, Plaintiff–Appellee David Low (Low) initiated suit against Minichino asserting that Minichino breached a written agreement to purchase real property from Low, and that Minichino had failed to respond to a demand for arbitration as required by the agreement. The Circuit Court granted Low's motion to compel arbitration and the dispute was submitted to arbitration. The Arbitrator's Decision awarded Low damages in the amount of $76,000, attorney's fees in the amount of $7,246.52, and costs in the amount of $718.18.

Low filed a motion to confirm the arbitration award, and Minichino, in turn, filed a motion to vacate the arbitration award. Minichino's motion to vacate alleged that the arbitration award was procured by fraud, claiming that Low had lied at the arbitration hearing. Minichino's declaration in support of her motion to vacate states, in relevant part:

2. On or about May 26, 2002, I entered into a DROA, as Buyer, to purchase residential property located at 4525 Une Place, Haiku, Maui, from the Plaintiff, David T. Low, as seller, for $646,000.00....

3. According to Sections C–24 and C–25 of said DROA, certain "financing contingencies[ ]" ... required that I had until June 25, 2002, to secure a loan commitment enabling me to complete the intended

purchase, or that I had the right to terminate the DROA on or before that date, June 25, 2002, by notifying the Seller of my inability to secure such a loan commitment and therefore my inability to close.

. . . .

10. *At the arbitration hearing, I testified that I gave both oral and written notice to the Seller prior to June 25, 2002, but the Arbitrator accepted the contrary testimony of the Seller, because I was unable to locate a copy of the notice that I provided the Seller prior to June 25, 2002,* and because, maintaining a presumption against me, "as a licensed realtor, Defendant had the requisite knowledge and experience to handle real estate transactions ... and to terminate a purchase" (Paragraphs 1 and 2, Page 3).

11. I was however unable to locate a copy of the written notice that I provided to the Seller prior to June 25, 2002, only because, through no fault of my own, my residence had been flooded twice since then, once on December 31, 2004, and again on October 16, 2006, as shown by the true and correct copies evidencing that damage to my property, and hence to my computer's hard drive and my files, as set forth in Exhibit "G" attached hereto.

12. Knowing that his testimony at the arbitration hearing was false, the Seller nevertheless lied before the Arbitrator, as a direct result of which he was awarded damages in the amount of $76,000.00, attorney's fees in the amount of $7,248.52 [sic], costs in the amount of $718.18, and his share of the Arbitrator's final fees in the amount of $1,224.67.

13. Subsequent to the entry of the arbitration award, I was finally able to locate at my residence a copy of one of the e-mails that I had sent to the Seller, dated June 23, 2002, unequivocally terminating said DROA, a true and correct copy of which is set forth in Exhibit "H" attached hereto, proving that the Seller lied at the arbitration hearing and procured the arbitration award in his favor through fraud and perjury at the arbitration hearing and in his pleadings before this Court. . . .

(emphasis added). In a supplemental declaration submitted to the Circuit Court, Minichino attests that after filing her motion to vacate she was able to locate two additional emails that she sent to Low, one on June 21, 2002 and the other on June 22, 2002.

The Circuit Court held a hearing on Low's motion to confirm the arbitration award and Minichino's motion to vacate the award. After considering Minichino's submissions, the Circuit Court granted confirmation of the arbitration award, denied the motion to vacate, and entered judgment for Low.

## II. *Application of the Test*

Hawaii Revised Statutes (HRS) § 658A–23(a)(1) (Supp.2010) authorizes a court to vacate an arbitration award when the award is procured by fraud. The three-part test to determine whether an arbitration award should be vacated for fraud is articulated in the majority opinion as follows: first, the movant must establish the fraud by clear and convincing evidence; *second, the fraud must not have been discoverable, upon the exercise of due diligence, prior to or during the arbitration* ; and third, the movant must demonstrate that the fraud had a material effect on a dispositive issue in the arbitration.[1]

---

1. For the third part of the test, the majority has chosen not to quote the *Bonar* test verbatim. I agree with the majority's articulation of the test.

Given this formulation, however, it appears that Minichino also fails to meet the third part of the test. Although Minichino's declaration states that she only needed to give notice of termination to Low, paragraph C–20 of the DROA titled "Contingency Procedures And Termination Provisions" required notice in writing *to escrow*. This paragraph states in pertinent part:

If the Benefitted Party wishes to terminate this DROA because a Contingency for that party's benefit has not been satisfied, the Benefitted Party must *deliver to Escrow a written notice terminating this DROA* prior to the expiration of the Contingency Period or such other termination period which may be set forth in a specific contingency in this DROA. If the Benefitted Party fails to deliver the *written notice to Escrow* within such time period, the Contingency shall be deemed to be waived. Each party understands the requirement to act upon each Contingency according to the strict deadlines described herein.

(Emphasis added). Minichino has not asserted, either to the Circuit Court or to this court, that she gave notice of termination to escrow. Therefore, notwithstanding Minichino's assertion that

The second part of the test precludes a party from asserting fraud to vacate an award if the party could have raised or discovered the purported fraud during the arbitration. "[I]f perjury is 'fraud' ... since it necessarily raises issues of credibility which have already been before the arbitrators once, the party relying on it must first show that he could not have discovered it during the arbitration, else he should have invoked it as a defense at that time." *Karppinen v. Karl Kiefer Mach. Co.*, 187 F.2d 32, 35 (2d Cir.1951). *See also, Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 307 (5th Cir.2004) (courts "have held that an arbitration award is not fraudulently obtained when the protesting party had an opportunity to rebut his opponent's claims at the hearing"); *Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 313 (7th Cir.1981) (party seeking to vacate arbitration award failed to meet due diligence requirement); *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 (9th Cir.1992) ("where the fraud or undue means is not only discoverable, but discovered and brought to the attention of the arbitrators, a disappointed party will not be given a second bite at the apple"); *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1339 (9th Cir.1986) (where party seeking to vacate arbitration award suspected individual had falsified documents, failure to subpoena the individual at arbitration "vitiates its claim that the alleged fraud was not discoverable by due diligence"); *Biotronik Mess–und Therapiegeraete GmbH & Co. v. Medford Med. Instrument Co.*, 415 F.Supp. 133, 137 (D.N.J. 1976) ("Most courts have held that an arbitration award is not fraudulently obtained ... when the protesting party had an opportunity to rebut his opponent's claims at the arbitration hearing."); *Kirschner v. West Co.*, 247 F.Supp. 550, 553 (E.D.Pa.1965) (court denied plaintiffs' motion to vacate arbitration award grounded on claim that defendant's witnesses had committed perjury,

stating that "[i]f the perjury of defendant's witnesses was as patent as is now claimed, it should have been made apparent to the arbitrator in the proceedings before him."); *Davenport v. Dimitrijevic*, 857 So.2d 957 (Fla.Dist.Ct.App.2003).

Several cases in particular help to delineate the line when the second part of the test has or has not been met. In *Bonar*, defendant Dean Witter sought to vacate part of an arbitration award when it discovered, post-arbitration, that an expert for the opposing side, Nix, had lied about his credentials. The Eleventh Circuit Court of Appeals vacated the relevant portion of the arbitration award because:

> Dean Witter has shown that it could not have discovered Nix's perjury before or during the arbitration hearing. Because the rules of the American Arbitration Association do not provide for a pre-hearing exchange of witness lists, Dean Witter did not know who would testify as appellees' expert witnesses until the time of the hearing. Without a pre-hearing opportunity to thoroughly investigate Nix's credentials, Dean Witter could not have known the extent to which he lied about them at the hearing.

835 F.2d at 1384. Thus, in *Bonar*, Dean Witter did not know of the fraud during the arbitration and could not have discovered it.

On the other hand, in *Seattle Packaging Corp.*, the Washington Court of Appeals held that the trial court *did not need to hold an evidentiary hearing* because the party seeking to vacate an arbitration award, SeaPak, had failed to demonstrate that it could not have discovered alleged perjury with due diligence before close of the arbitration hearing. 972 P.2d at 579. The case involved a dispute about the value of a company, and SeaPak claimed an opposing party and an expert gave perjured testimony as to whether the sale of another company was a comparable sale. After the arbitration hearing, individuals involved in the other sale gave

Low lied about receiving notice of termination, her allegation of perjury appears irrelevant to the material and dispositive issue under the terms of the DROA, *i.e.* whether *escrow* received notice of termination. Because the arbitration award can

be construed in this manner, and not reliant on any alleged perjury, this is another reason that the motion to vacate the arbitration award was properly denied.

sworn declarations purportedly countering the testimony of SeaPak's opponent and the expert. Addressing SeaPak's motion to vacate the award, the court noted that SeaPak had taken a position on the comparable sale issue at the arbitration hearing and could have obtained the information to counter the alleged perjury by contacting principals involved in the other sale. "Courts routinely deny motions to vacate arbitration awards where fraud would have been discoverable in the exercise of due diligence prior to or during the arbitration." 972 P.2d at 583.

Finally, in *Halliburton Energy Services, Inc. v. NL Industries*, 618 F.Supp.2d 614 (S.D.Tex.2009), after arbitration proceedings had concluded, plaintiff Halliburton discovered documents in its own possession that it had failed to produce during arbitration, but which it contended established fraud by other parties, the Tremont parties. Halliburton's argument that the arbitration award should be vacated under the *Bonar* test was rejected by the court, which explained in part:

> In *Bonar*, after finding that the amended motion to vacate was timely, the court emphasized that the alleged fraud on which it was based "must not have been discoverable upon the exercise of due diligence prior to or during the arbitration." *Bonar*, 835 F.2d at 1383 (citations omitted). The moving party in that case showed that "it could not have discovered the perjury before or during the arbitration hearing." *Id.* at 1384. In sharp contrast, Halliburton cannot argue that it could not have discovered the documents at issue or the alleged fraud—the Tremont Parties' failure to produce those documents—before or during the arbitration hearing. The newly submitted documents were *in Halliburton's own files* during the relevant period. Even *if* the Tremont Parties also had the newly submitted documents in their files and even *if* the Tremont Parties intentionally withheld them in the arbitration—neither of which Halliburton shows—Halliburton could have discovered the documents (and the Tremont Parties' failure to produce them) during the arbitration simply by looking in its own files.

The courts have not read *Bonar* as Halliburton does. The Eleventh Circuit, in considering a motion to modify or correct an arbitration award under section 11 of the FAA, has cited *Bonar* for the proposition that arbitration awards cannot be modified based on fraud that could have been discovered earlier. In *AIG Baker Sterling Heights, LLC v. Am. Multi–Cinema, Inc.*, the court cited *Bonar* in noting that "judicial review of arbitration decisions is 'among the narrowest known to the law,'" and that "[t]hat narrow review is why a court cannot vacate an arbitration award for fraud based on information available before or during the arbitration that the parties, through lack of diligence, failed to discover." 508 F.3d 995, 1001 (11th Cir.2007) (citing *Bonar*, 835 F.2d at 1383) (additional citation omitted). The *AIG Baker Sterling Heights* court held that the district court had erred in modifying the award, lamenting that while "[t]he parties elected to settle their dispute by arbitration rather than litigation," the appeal was pending "after more than three years of litigation." *Id.*

618 F.Supp.2d at 633–34 (brackets and emphasis in original).

In the instant case, Minichino's declaration states she testified at the arbitration hearing that she gave timely oral and written termination notice to Low, but that "the Arbitrator accepted the contrary testimony of [Low] because I was unable to locate a copy of the notice that I provided [to Low.]" She therefore took a position on the very point she wishes to now re-litigate (i.e., whether she gave timely notice to Low), and the Arbitrator assessed the credibility of the parties based on the evidence presented at that time. Minichino was not only aware of the alleged fraud (Low's alleged perjury) during the arbitration, but also, similar to *Halliburton*, she now seeks to show fraud by pointing to evidence she located post-arbitration that was in her control throughout. These circumstances should not be a sufficient basis for meeting the second part of the test.

The Hawai'i Supreme Court has consistently expressed the principle that "[b]ecause

of the legislative policy to encourage arbitration and thereby discourage litigation, judicial review of an arbitration award is confined to the strictest possible limits." *Gadd v. Kelley*, 66 Haw. 431, 441, 667 P.2d 251, 258 (1983) (quoting *Mars Constructors, Inc. v. Tropical Enters., Ltd.*, 51 Haw. 332, 336, 460 P.2d 317, 319 (1969) (internal quotation marks omitted)); *Tatibouet v. Ellsworth*, 99 Hawai'i 226, 54 P.3d 397 (2002). In striking the balance between preventing a fraudulently procured arbitration award and encouraging arbitration (thereby limiting litigation), it makes sense that a party who is aware of, or could have discovered, an alleged fraud prior to or during the arbitration proceeding, cannot get a second bite at the apple. This is especially true where evidence to prove the alleged fraud is in the control of the party seeking to vacate the award.

Minichino claims that flood damage at her home affected her ability to locate copies of the emails sent to Low. She does not state in her declaration whether she testified about these circumstances at arbitration. Low's counsel submitted a declaration to the Circuit Court attesting that, during arbitration, Minichino did not mention her evidence was lost because of a flood and she did not request adjournment of the hearing to allow her to look for the evidence.[2] Without explanation, Minichino now claims she was able to locate the emails post-arbitration. Rather than diligently addressing Low's alleged perjury at the arbitration hearing, when she was already aware of it, Minichino belatedly seeks a second opportunity to present evidence that she failed to present to the Arbitrator. The fact that Minichino not only knew of the fraud at the time of the arbitration but had in her control evidence of the alleged fraud undermines her claim that the fraud was not discoverable by due diligence.

### III. *Conclusion*

Under the adopted three-part test, I would conclude that there is no material fact in dispute requiring an evidentiary hearing, and

I would affirm the Circuit Court's December 26, 2007 judgment.

---

**2.** It is relevant to note that, if Minichino needed additional time during the arbitration proceeding to locate the emails, she could have made such a request. If, for some reason, the Arbitrator failed to give her a reasonable time to locate the emails, that issue could be addressed by the courts. Under HRS § 658A–23(a)(3), an arbitration award can be vacated when "[a]n arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement[.]"